**Wanna VanCLEVE and Thomas VanCleve, Plaintiffs–Respondents,**

v.

**Dale SPARKS and Patricia Sparks, Defendants–Appellants.**

No. 25776.

Missouri Court of Appeals,
Southern District,
Division One.

April 28, 2004.

---

Daniel T. Moore, Moore, Walsh & Albright, L.L.P., Poplar Bluff, for Appellants.

Wallace L. Duncan, Duncan & Pierce, Poplar Bluff, for Respondents.

NANCY STEFFEN RAHMEYER,
Chief Judge.

Wanna VanCleve and Thomas VanCleve (collectively, "Respondents") filed a petition against Dale and Patricia Sparks (collectively, "Appellants") seeking a declaratory judgment allowing Respondents to install speed bumps on an ingress and egress easement shared by the parties. The trial court granted the declaratory judgment and permanently enjoined Appellants, the owners of the dominant estate, from removing, altering, or destroying two speed bumps of no more than four inches in height constructed by Respondents. On appeal, Appellants argue the trial court erred in its application of the law by allowing Respondents to install the speed bumps because the speed bumps substantially and unreasonably interfere with Appellants' use of the established easement. We disagree and affirm the judgment of the trial court.

Wanna and John VanCleve purchased approximately twenty acres in Butler County, Missouri in 1957. Prior to John's death, the couple subdivided their property; they deeded Tract 1, the property closest to the public road, to their son and daughter-in-law, Wade[1] and Vickey VanCleve, and deeded Tract 3, the property furthest from the public road, to their daughter and son-in-law, Patricia and Dale Sparks. Wanna VanCleve and her third child, Thomas, reside on Tract 2, which is closest to Appellants' property and between Tract 1 and Tract 3.

In 1996, the parties entered into a Driveway Agreement ("Agreement"), which created a twenty-foot-wide easement that extended from the public road bordering Tract 1, through Tract 2, and ending at the Appellants' home in Tract 3. The easement traced the already-established, eight-foot-wide gravel driveway leading to Respondents' Tract 2 home and served as Appellants' only access to the public road.

---

1. Wade VanCleve is deceased.

The Agreement contained the following limitations:

1. That the parties ... shall have the right to utilize the said driveway to serve each of their respective properties, and shall have the right of ingress and egress upon said driveway.

2. The parties ... will equally share in the maintenance of said driveway, and shall equally be responsible for all repair and expenses in connection with the upkeep of said driveway.

3. It is intended by the parties that this agreement shall run with the land, and shall inure to the benefit of the parties, their heirs, and assigns, and shall be binding upon the successors in title of the respective parties.

After the implementation of the Agreement in 1996, the parties' relationship deteriorated. In that time there were at least two physical altercations between Tom VanCleve and Dale Sparks, one of which resulted in the involvement of law enforcement. Respondents' concern was that Mr. Sparks, his brothers, and various delivery drivers traveled down the driveway at excessive speeds. Appellants drive "Snap–On Tools" trucks which weigh in excess of thirty-six thousand pounds per vehicle. Further, one of the trucks is twenty feet in length and the other is sixteen feet in length, while both are eight-feet wide, which is the width of the driveway. Mr. Sparks, denied that he drove at excessive speeds and testified that he drove between ten and twenty-five miles per hour on the driveway.

After contacting the City of Poplar Bluff and the Sheriff's Department on numerous occasions for assistance, Respondents decided to take matters into their own hands. In August of 2001, Respondents contracted to have the driveway paved from the public road that borders Tract 1 to the property line they share with Appellants. They also had a pair of speed bumps installed in the driveway at that time. The first speed bump was located past Respondents' house and before the entrance to their workshop, which is a building that sits across the driveway from the house. The second speed bump was placed past Respondents' workshop. Appellants must drive over both speed bumps to reach their home.

Respondents testified that the speed bumps were placed so that they could safely enter and exit their workshop and house, back their vehicles out of the driveway, take their trash out, and walk their dog.[2] According to Respondents, Appellants soon began a concerted effort to flatten the speed bumps by stopping their large trucks on top of them and eventually Respondents had to have the speed bumps raised due to compression of the concrete.[3] Claiming the speed bumps caused damage to the "Snap–On Tools" trucks and their inventory, Mr. Sparks used his tractor blade to remove the speed bumps. Respondents then filed the present action for declaratory judgment and to enjoin the removal of the speed bumps.

The trial court found that, "[g]iven the close proximity of the easement to [Re-

---

**2.** Respondents' house sits atop a hill. Slightly past their workshop, the driveway slopes steeply downward in such a manner that a person coming up the hill from Appellants' land would be unable to see a pedestrian crossing the driveway.

**3.** Tom Evans, the concrete contractor, testified that originally the first speed bump was an inch-and-a-half tall and the second speed bump was two-and-a-half inches tall. After they increased their height, the speed bumps measured three-and-a-half inches and four-and-a-half inches, respectively.

spondents'] home, the age and health of the [Respondents], and the propensity of the [Appellants] to drive at unreasonably high rates of speed and established by credible evidence, it is the Court's opinion that the use of speed bumps, in this instance, is not an unreasonable or substantial interference of [Appellants'] rights." This appeal follows.

In reviewing a court-tried case, we must affirm the trial court unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[4] Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case. *Wallace v. Van Pelt*, 969 S.W.2d 380, 382 (Mo.App. W.D.1998). We view the evidence in the light most favorable to the judgment. *Searcy v. Seedorff*, 8 S.W.3d 113, 116 (Mo. banc 1999). The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe all, part, or none of the testimony of any witness. *Harris v. Desisto*, 932 S.W.2d 435, 443 (Mo.App. W.D.1996).

The reasonableness of the parties' actions is a question of fact to be determined by the trial court. *Beiser v. Hensic*, 655 S.W.2d 660, 663 (Mo.App. E.D.1983). In assessing challenges to the trial court's findings of fact, the appellate court defers to the trial court's superior ability to judge the credibility of witnesses. *Parnell v. Sherman*, 899 S.W.2d 900, 901 (Mo.App. S.D.1995).

■ Appellants' sole point on appeal asserts that the trial court erred in allowing Respondents to place speed bumps on a dedicated driveway that was subject to an easement. They assert that the ruling is contrary to established law in that the owners of a servient estate are prohibited from making an easement less useful or convenient for the holders of the dominant estate. Further, they assert their trucks suffered damage as a result of the speed bumps and that said damage substantially interferes with their use of the driveway.

■ The easement in question entitles its owners to a limited use or enjoyment of the land of another. *Smith v. Woodard*, 15 S.W.3d 768, 772 (Mo.App. S.D.2000). The owner of the land may use his property in any manner not inconsistent with the easement granted. *Kiwala v. Biermann*, 555 S.W.2d 663, 666 (Mo.App.1977). An owner of property subject to an easement of ingress and egress may erect structures on the premises which do not interfere with the dominant estate's enjoyment of the easement. *Reutner v. Vouga*, 367 S.W.2d 34, 42 (Mo.App.1963).

Here, Appellants and Respondents both rely on the case of *Beiser*, the only Missouri easement case involving speed bumps. In *Beiser*, the appellate court affirmed an injunction prohibiting the parties involved from in any manner impeding or obstructing ingress and egress over the roadway at issue. 655 S.W.2d at 663. Appellants, therefore, urge that under *Beiser* neither the servient estate nor the dominant estate may create any type of surface obstructions on an easement. This court disagrees with Appellants' broad interpretation of the principles of law in *Beiser*.

The *Beiser* court stated:

The owner of a servient estate has the right of full dominion and use of a roadway strip of land, but he cannot substantially interfere with its reasonable use by the easement owner. The servient

---

4. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d).

estate owner may not make the easement less useful or convenient. Reasonable use of an easement is a question of fact.

*Id.* at 663. (internal citations omitted).

After hearing the testimony of the witnesses, the court in *Beiser* was able to determine, under the circumstances of that case, that speed bumps were an unreasonable interference with the use of the road. *Id.* Although Appellants argue that any obstruction erected on the easement is unlawful, this inflexible suggestion by Appellants ignores the principle that the servient owner retains a right of dominion and use of the property. Where, as here, the easement is one for ingress and egress, Respondents may erect structures as long as they do not interfere with Appellants' reasonable enjoyment of the easement. *Stotzenberger v. Perkins,* 332 Mo. 391, 401, 58 S.W.2d 983, 987 (1933). As in *Beiser,* the determination here is whether, under these facts, the trial court erroneously declared or misapplied the law.

It is clear from the evidence that the speed bumps do not substantially impede Appellants' general rights as stated in the Agreement. At trial, Respondents even admitted that the speed bumps "just made [them] slow down" and "didn't keep [them] from going back and forth"; therefore, they continue to enjoy the benefits conferred by the Agreement. Additionally, there is no evidence to show that any damage suffered by Appellants' trucks was traceable to these particular speed bumps. Appellants testified that they drive their trucks over brick streets, city streets, and highways, as well as other speed bumps located throughout Butler County, but still contended that their wheel and springs were damaged by Respondents' speed bumps. Although Appellants also asserted the speed bumps were from ten to twelve inches in height, the trial court limited the size of the speed bumps to no more than four inches. The record shows that the speed bumps caused minimal interference in Appellants' use and enjoyment of the easement.

Weighed against Appellants' rights are the rights of Respondents to the reasonable use of their own land. Respondents testified that the speed bumps are necessary to make them feel safe on their property; Mrs. VanCleve, due to her advancing age and poor vision, felt at risk whenever she ventured outside her home. Furthermore, both Respondents recounted several experiences in which they were forced to move quickly out of the path of one of Appellants' vehicles. When considering the relative benefits to Respondents against the claimed injury to Appellants, the burden on Appellants to drive slower is slight compared to the benefit to Respondents' personal safety. *See RFS, Inc. v. Cohen,* 772 S.W.2d 713, 718 (Mo.App. E.D. 1989) (quoting *Hubert v. Magidson,* 243 S.W.2d 337, 343 (Mo.1951) (noting that it is appropriate to consider the relative benefits to one party as against the injury to the other)). The trial court was correct in its application and consideration of the law.

The judgment of the trial court is affirmed.

BARNEY, P.J., and GARRISON, J., concur.